SUEUGA of Pago Pago, Plaintiff

v.

LAISENE T. of Nuuuli, Defendant

No. 5-1939

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Lagafuaina"]

December 27, 1939

ARTHUR A. MORROW, *Chief Justice;* and PULETU, *Associate Judge.*

## DECISION

Heard at Fagatogo December 11, 1939.

Viavia and Tavete for Sueuga.

Laisene pro se.

MORROW, *Chief Justice*

The record shows that Laisene filed his application on June 2, 1939 to be registered as the matai of the Lagafuaina family, and that Sueuga filed an objection thereto on June 20, 1939, becoming a candidate for the name himself.

At the outset the court wishes to point out that in reaching a decision in a case such as this the court ascertains the facts from the evidence and then applies the law thereto. The court does not make the law nor is it free to make any decision which it wishes. It must decide the case according to the law and the evidence. If the law were otherwise the rights, titles and property of the Samoan people would be endangered.

Formerly the law was to the effect that the High Court in a matai name case should award the matai name to the candidate with the best hereditary right. In 1937 the Fono recommended that the law be changed and pursuant to the recommendation the Governor enacted Par. 4A of Sec. 79 of the Codification of the Regulations and Orders for the Government of American Samoa, which paragraph reads as follows:

"In the trial of Matai name cases, the High Court shall be guided by the following in the priority listed:

1. The wish of the majority of the family.

2. The forcefulness, character, personality, and leadership of the candidate.

3. The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail.

4. The value of the holder of the Matai name to the Government of American Samoa."

■ The law obviously means that the wish of the majority of the family shall be given more weight by the court in awarding a matai name than any other of the matters to be considered by it; likewise that the "forcefulness, character, personality and leadership of the candidate" shall be given more weight than the matter of hereditary right or the value of the holder of the matai name to the Government of American Samoa; likewise that the matter of hereditary right shall receive more consideration than the matter of the value of the holder of the matai name to the government. An examination of the decisions of this court applying the foregoing Par. 4A will demonstrate that the foregoing interpretation of the statute has been uniformly followed.

We shall now determine which of the candidates the majority of the family wish to be the matai. Each of the candidates filed with the Clerk of the Court a petition signed by various members of the family asking that he be made the matai. These petitions were introduced in evidence as evidence of the wishes of the family. The petition for Laisene had 117 signatures on it. That for Sueuga had 69. Counsel for Sueuga objected to 38 of the signers on Laisene's petition claiming that these 38 signers were not members of the Lagafuaina family and also that they were too young to sign such a petition. We assume that the objection on the ground of age was based upon the theory that these 38 were too young to have an intelligent wish as to who should be the matai of the family.

■ There was conflicting evidence as to whether the 38 were members of the Lagafuaina family. It was claimed for Sueuga that they were members of the Taumua family and for that reason could not be members of the Lagafuaina family. It does not follow, granting that they were mem-

84

bers of the Taumua family, that they could not also be members of the Lagafuaina family. Samoan custom permits a person to be a member of two different families at the same time. That the claim has no foundation whatsoever is shown conclusively by the testimony of Sueuga himself. He testified that he was a member of the Mauga family being the son of Mauga Manuma; also that he was a member of the Teo family with whom he has lived all of his life. He also testified that he was a member of the Lagafuaina family. Some of the 38 objected to were nieces and nephews of Laisene. The evidence showed that Laisene's grandfather was a Lagafuaina. Therefore one fourth of his blood is Lagafuaina blood. His nieces and nephews consequently have one eighth Lagafuaina blood. Sueuga testified that his great-great-grandfather was Lagafuaina Vaitofiga. His testimony on this point was not disputed. He has one sixteenth Lagafuaina blood in his veins; it would certainly follow that Laisene's nieces and nephews with one eighth Lagafuaina blood in their veins would also be members. If Sueuga is a member of the Mauga, Teo and Lagafuaina families at the same time, as his testimony showed him to be, there is no reason why Laisene's nieces and nephews cannot belong to the Taumua and Lagafuaina families at the same time. The nieces and nephews of Laisene have twice as much Lagafuaina blood as Sueuga. If he is a member of the Lagafuaina family, they certainly are too. If they are not members of the family, then Sueuga is not and he is seeking a matai title without being a member of the family. But we think both Sueuga and Laisene's nieces and nephews are members of the Lagafuaina family according to Samoan custom.

Some of the 38 signers objected to were too young and should not be counted. However, it is not necessary for us to determine which of the 38 should not be counted on ac-

count of their extreme youth and consequent inability to have an intelligent wish as to who should be the matai of their family. If we exclude from consideration every one of the 38 objected to (and it is obvious that all of them should not be excluded) Laisene still has 79 members wishing him to be the matai. Sueuga has only 69. Consequently, Laisene having a majority of the family with him prevails upon the first issue.

We shall now consider the matter of forcefulness, character, personality and leadership of the respective candidates. There was nothing in the evidence tending to show that the character of either of the candidates was otherwise than good. As far as personality and forcefulness are concerned, we believe the candidates to be substantially on a par. However, the evidence shows that Laisene has lived all of his life in Nuuuli with the exception of a few months which he spent in Honolulu. Sueuga has lived all of his life in the village of Pago Pago, making only an occasional visit to Nuuuli. Laisene has lived in the Lagafuaina family for a portion of his life. Sueuga has always lived in the Teo family. The name Lagafuaina is attached to the village of Nuuuli. The majority of the members of the family live in that village and surrounding territory. The family lands are in or near that village. Laisene having lived in Nuuuli all of his life except for a few months and for a portion of his life in the Lagafuaina family is very much better acquainted with the needs of the various members of the Lagafuaina family and with the family lands on which he has worked than is Sueuga who has never lived in Nuuuli, but has spent all of his 58 years in Pago Pago. Laisene is a member of the Fita Fita Guard. Sueuga is a retired Fita Fita.

We believe that Laisene particularly in view of his obviously greater familiarity with the needs of the family and the family lands is better prepared to undertake the

86

leadership of the Lagafuaina family than Sueuga. Consequently Laisene prevails over Sueuga upon the second issue.

■ The undisputed evidence showed that Sueuga is the great-great-grandson of Lagafuaina Vaitofiga and' that Laisene is the grandson of Lagafuaina Sene, the nephew of Lagafuaina Vita, and the first cousin of Lagafuaina Vaa. In view of the foregoing Laisene has one fourth Lagafuaina blood in his veins. Sueuga has one sixteenth or only one fourth as much as Laisene. Each of the candidates traced his descent from a Lagafuaina through the daughter of a Lagafuaina. Inasmuch as Laisene has four times as much Lagafuaina blood as Sueuga it is obvious that he has the better hereditary right to the name and prevails upon the third issue.

■ On the issue of the value of the holder of the name to the Government of American Samoa we think the principal matter to be considered is the ability of each of the respective candidates to look after the family affairs. Laisene is 39 years old. Sueuga is 58. Laisene is in the prime of life. Sueuga has passed his zenith. Laisene having lived in Nuuuli all his life with the exception of a few months is much more familiar with the family needs and family problems than is Sueuga who has spent his 58 years in Pago Pago. We think in view of the foregoing that Laisene is the better qualified for leadership of the family and for that reason he will be more valuable to the Government as the matai of the Lagafuaina family than would Sueuga. It follows that Laisene prevails upon the fourth issue.

To sum up, the majority of the family wish Laisene to be the matai; his capacity for leadership, which the second part of the statute requires us to consider, is superior to that of Sueuga; Laisene has four times as much Lagafuaina blood in his veins as Sueuga and consequently the better hereditary right to the name; he will be more valuable

to the Government as the Lagafuaina than will Sueuga be-
cause his greater familiarity with the needs of the family
and its lands gives him the superior qualifications for the
direction of the family affairs.

Our conclusion, therefore, is that under the law and the
evidence Laisene is entitled to the matai name Lagafuaina.
The Attorney General will be advised to record Laisene as
the Lagafuaina.

Costs in the sum of $25.00 are hereby assessed against
Sueuga, the same to be paid within 60 days.